UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF KENTUCKY
LEXINGTON

Eastern District of Kentucky
**FILED**

**JUN 20 2005**

AT LEXINGTON
LESLIE G WHITMER
CLERK U S DISTRICT COURT

CIVIL ACTION NO. 05-CV-236-JMH

CHRISTOPHER J. BOLT                                        PETITIONER

VS:                    **MEMORANDUM OPINION AND ORDER**

JOE BOOKER, JR., WARDEN                                    RESPONDENT

Christopher J. Bolt, an individual incarcerated in the Federal Medical Center ("FMC") in Lexington, Kentucky, has submitted a *pro se* petition for writ of habeas corpus pursuant to 28 U.S.C. §2241. He has not paid the $5.00 filing fee but has applied to proceed *in forma pauperis.*

This matter is before the Court for screening. 28 U.S.C. §2243; *Demjanjuk v. Petrovsky*, 612 F. Supp. 571 (N.D. Ohio 1985) (citing *Allen v. Perini*, 424 F.2d 134, 141 (6th Cir. 1970), *cert. denied*, 400 U.S. 906 (1970); *accord Aubut v. State of Maine*, 431 F.2d 688, 689 (1st Cir. 1970)).

This is a *pro se* petition and, as such, it is held to less stringent standards than those drafted by attorneys. *See Cruz v. Beto*, 405 U.S. 319 (1972); *Haines v. Kerner*, 404 U.S. 519 (1972). The allegations in a *pro se* petition must be taken as true and construed in favor of the petitioner. *See Malone v. Colyer*, 710 F.2d 258, 260 (6th Cir. 1983). However, 28 U.S.C. §1915(e)(2) affords a court the authority to dismiss a case at any time if the court determines the action: (i) is frivolous or malicious, or (ii) fails to state a claim upon which relief can be granted.

### RESPONDENT

The named respondent is Joe Booker, Jr., Warden of FMC-Lexington.

### CLAIMS

The plaintiff contends that this is a habeas proceeding like the case of *Colton v. Ashcroft*, 299

F. Supp. 2d 681 (E.D. Ky. 2004) (Hon Jennifer B. Coffman, presiding). Broadly construed, it appears that the respondent has violated his due process rights under the Fifth Amendment of the United States Constitution by failing to release him to a halfway house in accordance with the *Colton* decision.[1] The petitioner states that Judge John C. Shabaz, Judge in the United States District Court for the Western District of Wisconsin ("the trial court"), sentenced him to an 84-month prison term and ordered that the petitioner serve the last six months of that term in a halfway house.[2]

<u>PREVIOUS LITIGATION</u>

The instant petitioner has a history of filing lawsuits in this Court. Prior to filing the instant proceeding on June 6, 2005, the petitioner filed the following four previous civil actions:

(1) *Bolt v. Snyder*, Lexington No. 03-CV-123-JMH (filed March 7, 2003) ("*Bolt I*"). The plaintiff filed a civil rights complaint under 28 U.S.C. §1331 pursuant to the doctrine announced in *Bivens v. Six Unknown Federal Narcotics Agents*, 403 U.S. 388 (1971). The petitioner alleged in *Bolt I* that he had received inadequate medical treatment at FMC-Lexington in violation of the Eighth Amendment, and that he had been subjected to cruel and retaliatory treatment by two unidentified FMC-Lexington employees. *Id.* at 3. On April 29, 2003, the undersigned dismissed *Bolt I* based upon the plaintiff's failure to demonstrate that he brought his complaints to Bureau of

---

[1]

    *Colton* dealt with the Bureau of Prisons (BOP)'s having changed the date on which the petitioner was scheduled for release to a halfway house. The petitioner therein was clearly seeking early release, and he demonstrated that his continuing confinement in the custody of the warden/respondent past the date would be "in violation of the Constitution or laws or treaties of the United States."

[2]

    In support of his contention, the petitioner states "See attached document." The attachments, however, consist only of: (1) a copy of the reported *Colton* decision; and (2) a copy of an Order Judge Shabaz entered on September 26, 2002, ordering the United States Marshals Service to transfer the petitioner to the custody of the United States Bureau of Prisons ("BOP") during the petitioner's pretrial proceedings, because the Sheriff in Dane County, Wisconsin, would no longer allow the plaintiff to be detained at the Dane County Jail.

Prisons ("BOP") personnel in the administrative process before filing the lawsuit.

(2) *Bolt v. Booker*, Lexington No. 03-CV-292-KSF (filed July 8, 2003) ("*Bolt II*"). The plaintiff filed an initiating document in *Bolt II* which he entitled as a petition for writ of habeas corpus. The Court determined the submission was actually a *Bivens* complaint under 28 U.S.C. §1331. On August 26, 2003, the Court dismissed the complaint in *Bolt II*, *sua sponte*, without prejudice, after finding that the plaintiff had not demonstrated that he had exhausted the BOP administrative remedy process, as is required by another provision of the Prisoner Litigation Reform Act of 1995 ("the PLRA.").[3] In the Memorandum Opinion and Order dismissing *Bolt II*, Judge Forester stated as follows:

> . . . [Bolt] alleges that he suffers from terminal and life-threatening medical conditions which have required medical attention but that "the defendants and medical staff" have knowingly deprived him of necessary medical treatment. He further asserts that his medical records were altered by unidentified persons in order "to provide no treatment."
>
> The petitioner/plaintiff also accuses the "defendants" of intentionally trying to cause his death by ignoring his complaints about the conditions of his confinement. To the extent that these claims challenge the conditions of his confinement at a federal prison, and/or the deliberate indifference to his serious medical needs, the Court determines that this proceeding is more properly characterized as one falling under 28 U.S.C. §1331, pursuant to the doctrine announced in *Bivens v. Six Unknown Narcotics Agents*, 403 U.S. 388 (1971), than under the habeas corpus statute, 28

---

[3]

    In addition to requiring the courts to screen prisoners' complaints, the United States Congress also mandated in the PLRA that prisoners avail themselves of administrative remedies as a precondition to bringing a cause of action in federal court. The relevant statute reads as follows:

> No action shall be brought with respect to prison conditions under §1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. §1997e(a).

U.S.C. §2241. For this reason, the Court hereby determines that the Clerk of this Court should reclassify this civil proceeding action as a *Bivens* action. The Court will hereafter refer to the petitioner as "the plaintiff" and will refer to the respondent as "the defendant."

[*See Bolt II*, Mem. Op & Order, dated August 26, 2003, Record No. 4 pp. 2-3.]

(3) *Bolt v. Booker, et al.*, Lexington No. 04-CV-33-JMH (filed January 28, 2004) ("*Bolt III*"). The plaintiff filed a *Bivens* Eighth Amendment action in *Bolt III* complaining about the diet at FMC-Lexington and that institution's alleged failure to provide foods permitted by his Islamic faith. The plaintiff contended that the meal service "caused [him] near death and committed to the medical unit with an 'IV' life support system to save the plaintiff's life." On May 24, 2004, the undersigned summarily dismissed *Bolt III* on the grounds that the petitioner had again failed to exhaust the administrative remedy procedures under 28 C.F.R. §§542.10-.16.

(4) *Bolt v. Booker et al*, Lexington 04-CV 249-KSF (filed June 4, 2004) ("*Bolt IV*"). The petitioner labeled his submission as a petition for writ of habeas corpus, in which he claimed he was seeking release into a halfway house, as he claims in the instant proceeding (05-236-JMH). Upon examination of the claims, however, the Court determined that the petitioner had once again actually filed a *Bivens* complaint under 28 U.S.C. §1331, complaining that the conditions of his confinement violated the Eighth Amendment. *Bolt IV* was the petitioner's fourth case filed within fifteen (15) months.[4] The Court dismissed *Bolt IV* without prejudice on September 13, 2004, concluding that the petitioner had neither alleged nor demonstrated exhaustion of the BOP administrative remedies.

The Court finds it relevant to note that when Judge Forester dismissed *Bolt IV*, he warned

---

[4]

In all of four of these proceedings, the petitioner claimed to have been near death and in need of the Court's immediate attention.

the instant petitioner of the "Three Strikes" provision of the PLRA (28 U.S.C. §1915(g), which

applied to him.[5] Judge Forester stated as follows:

> "Therefore, a prisoner meeting the statutory condition of having three prior actions
> dismissed for any of the reasons set out above may not be granted permission to
> proceed without prepayment of fees under §1915; the only exception to this
> limitation is if the prisoner is under imminent danger of serious physical injury.
> Plaintiff is advised to consider this provision prior to any future filings.
>
> Additionally, the plaintiff should be aware that the Court has an obligation to protect
> the orderly and expeditious administration of justice. *Urban v. United Nations*, 768
> F.2d 1497, 1500 (D.C. Cir. 1985). A Court possesses inherent authority to sanction
> a party who has acted in bad faith, vexatiously, wantonly, or for oppressive reasons.
> *Chambers v. NASCO, Inc.*, 501 U.S. 32, 44 (1991). Federal courts are also vested
> with statutory authority to enter orders "necessary or appropriate in aid of their
> respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C.
> §1651; *Tripati v. Beaman*, 878 F.2d 351, 352 (10th Cir. 1989).
>
> In light of the repetitious litigation by the instant plaintiff, it is more than fair for this
> Court to admonish him that his continued ill-founded filings may become an open
> invitation for this Court to take protective actions. The plaintiff is reminded that
> "[n]o one, rich or poor, is entitled to abuse the judicial process." *Crisafi v. Holland*,
> 655 F.2d 1305, 1309 (D.C. Cir. 1981)."

*See Bolt IV*, Mem. Op.& Order dated September 13, 2004, Record No.9, pp. 9-10.

DISCUSSION

1. Three Strikes Dismissal

The instant petitioner does not allege that he is under imminent danger of serious physical

injury as required in 28 U.S.C. §1915(g). Accordingly, the Court would be well within its rights and

authority to dismiss the instant petition as running afoul of the " Three Strikes Warning" of which

---

[5]

In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding
under this section if the prisoner has, on three or more prior occasions, while incarcerated or detained
in any facility, brought an action or appeal in a court of the United States that was dismissed on the
grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted,
unless the prisoner is under imminent danger of serious physical injury.

28 U.S.C. §1915(g).

he was clearly advised in the Order dismissing *Bolt IV*. Given that the instant petition is, however, one properly asserted as a petition for habeas corpus, and not a civil rights action, the Court will entertain the instant petition on the merits and will not dismiss it under the "Three Strikes" provision of 28 U.S.C. §1915(g).

## 2. Dismissal on the Merits

For three reasons, the instant petition fails to state a due process claim upon which relief can be granted and must be dismissed with prejudice on the merits. The Court will discuss each reason.

## A. Trial Court Has No Authority to Dictate Prison Placement

First, the sentencing court has no authority to direct where a federal prisoner will be confined or whether he will be allowed to serve part of his term in a halfway house, referred to hereafter as a Community Corrections Center ("CCC"). Rather, the Attorney General of the United States has delegated those discretionary decisions to the Director of the BOP, which has a classification procedure. 18 U.S.C. §4081; 28 C.F.R. §0.96. *See e.g., Peck v. Hoff*, 660 F.2d 371 (8th Cir. 1981). Congress has given federal prison officials full discretion to control the conditions of confinement, and prisoners have no constitutional entitlement to invoke due process claims. *Moody v. Daggett*, 429 U.S. 78, 88 n.9 (1976); *Marchesani v. McCune*, 531 F.2d 459 (10th Cir.), *cert. denied*, 429 U.S. 846 (1976) (inmates have neither protected liberty interests nor property interests in custodial classification).

The Sixth Circuit, in an unpublished opinion, discussed this very issue when the petitioner therein, Locklear, wanted to serve the remainder of his term at a prison camp in North Carolina. In *Locklear v. Holland*, 194 F.3d 1313, 1999 WL 1000835 (6th Cir. (Ky.)), Locklear's Team

6

recommended that Locklear's custody level be lowered and that he be transferred to a prison camp close to home. Locklear's presentence investigation report ("PSI"), however, contained purportedly inaccurate information alleging that Locklear had been charged with rape. Locklear strongly disputed the PSI, which he claimed caused him to be denied placement in the prison camp, thus violating his due process rights.

The Sixth Circuit rejected Locklear's claim, citing *Moody v. Daggett, supra* at 88, n.9, for the proposition that prisoners generally do not have a due process liberty interest in their placement and classification while incarcerated.

> "To establish the existence of a liberty interest, a prisoner must show that he has been subjected to an 'atypical and significant hardship . . . in relation to the ordinary incidents of prison life,' *see Sandin v. Conner*, 515 U.S. 472, 484 (1995), or that the government's actions 'will inevitably affect the duration of his sentence." *Id.*

*Locklear v. Holland* at **2. See other authorities dispositive of the BOP's full authority to promulgate rules governing the treatment and classification of prisoners, and the agency's *interpretations* of the classification rules: *Bagarozy v. Wiley*, 1999 WL 33504439, *4 (N.D. N.Y.) (classification decisions are left to the full discretion of the BOP); *Gissendanner v. Menifee*, 975 F.Supp. 249, 251 (W.D. N.Y. 1997) ("The BOP's discretion in making classification decisions is 'virtually unfettered.'"); *Smith v. U.S. Bureau of Prisons*, 1996 WL 43556 (D. D.C. January 31, 1996) (citing *Reno v. Koray*, 515 U.S. 50, 60 (1995)); *Rosenberg v. Meese*, 622 F.Supp. 1451, 1470 (S.D. N.Y. 1985).

Assuming as true the instant petitioner's assertion that the trial court recommended that he serve six months in a CCC, the trial court can only make recommendations which are not binding on the BOP. Congress has granted exclusive authority to the Attorney General and the BOP to

7

designate the place of confinement for federal prisoners. 18 U.S.C. §3621. "The BOP has 'sole discretion' to determine the facility and the treatment programs in which a federal prisoner should be placed." *Gissendanner v. Menifee*, 975 F. Supp. at 250-251.

The *Gissendanner* opinion is particularly dispositive because, somewhat similar to the facts as alleged by the instant petitioner, the trial court had strongly recommended that Gissendanner be placed in a facility close to Rochester, New York, *and* in an Intensive Confinement Center (ICC) program offered by the BOP. The ICC program involved community-based placement or sentence reduction. The BOP determined that Gissendanner was not eligible for the ICC program, concluding that his offense was a "crime of violence" because multiple weapons had been seized from his residence as part of his overall offense behavior. The District Court upheld BOP's refusal to allow Gissendanner to participate in the ICC program, rejecting Gissendanner's theories of due process violations and entitlement to a writ of mandamus.

## 2. No Liberty Interest in CCC Placement

The second and related reason the petitioner's habeas claim fails is because transfers and prison assignments are functions wholly within the discretion of the Bureau of Prisons. *See Olim v. Wakinekona*, 461 U.S. 238 (1983); *Meachum v. Fano*, 427 U.S. 215, *reh'g denied*, 429 U.S. 873 (1976). Federal inmates do not have a liberty interest in either remaining free from discretionary transfers to less agreeable prisons or in seeking a transfer to a facility more desirable to them. *Meachum*, 427 U.S. 215. *See also Montanye v. Haymes*, 427 U.S. 236 (1976); *Grayson v. Rison*, 945 F.2d 1064 (9th Cir. 1991); *Beard v. Livesay*, 798 F.2d 874 (6th Cir. 1986); *Leibowitz v. United States*, 729 F.Supp. 556 (E.D. MI 1989), *aff'd without opinion*, 914 F.2d 256 (6th Cir. 1990), *cert. denied*, 499 U.S. 963 (1991); *Olim v. Wakinekona, supra*.

8

The instant petitioner has failed to demonstrate to this Court if or how his inability to be transferred to a CCC results in an "atypical and significant hardship" as required by *Sandin v. Conner, supra*. He has failed to plead facts which override *Moody v. Daggett*'s holding that generally prisoners have no protected due process or liberty interests in their classifications. Nor has Petitioner alleged any facts suggesting that the *term* of his sentence will be affected. The Court is unable to grant the relief requested given the BOP's broad, virtually unfettered discretion to apply its management variables and interpret its own classification rules.

In sum, claims based upon the classification procedures do not state constitutional claims. *See Moody v. Daggett* 429 U.S. at 88 n.9; *Jones v. United States*, 534 F.2d 53 (5th Cir.), *cert. denied*, 429 U.S. 978 (1976). Therefore, the petitioner's due process complaint about the decision to not permit him placement in a CCC fails to state a constitutional claim, and his claims on this issue must be dismissed.

### C. *Colton* is Inapplicable

The facts of the instant petition are distinguishable from the facts of *Colton*. A brief discussion is required prior to distinguishing *Colton* from the instant proceeding.

Prior to December 20, 2002, under its old interpretation of 18 U.S.C. §3624(c), the BOP uniformly designated federal inmates in CCC's for the last 180 days (six months) of their sentences, even if that placement exceeded the last ten percent of their sentences. This policy was known as the "Six Month Policy."

On December 13, 2002, the Department of Justice's Office of Legal Counsel ("OLC") issued a memorandum ("the OLC Memo") declaring that the Six Month Policy was "unlawful." The OLC Memo concluded that the BOP could not designate a CCC as a place of confinement pursuant to 18

9

U.S.C. §3621, because a CCC is not a "penal or correctional facility" within the meaning of the statute. The OLC Memo stated a change in the BOP's longstanding interpretation of 18 U.S.C. §3624(c) and its previous policy regarding inmates' placement in CCC's.

On December 20, 2002, the BOP's General Counsel issued a "Memorandum for Chief Executive Officers" entitled "Community Confinement Procedure Changes" ("the December 20, 2002 Memorandum"). Pursuant to the change effected in the December 20, 2002 Memorandum, pre-release into CCC designations became limited to the last 10 percent of the prison sentence, not to exceed six months ("the 10% Rule").

In *Colton*, Judge Coffman of this Court granted injunctive relief and ordered the BOP to release Colton into CCC placement. The grounds for the decision were that the 10% Rule, as applied to Colton, violated the Administrative Procedure Act *and* the Ex Post Facto Clause. In *Colton*, the petitioners had been sentenced *prior* to the December, 2002 implementation of the 10% Rule. Judge Coffman, in *Colton*, emphasized that under the particular facts of her case, the retroactive effect of the 10% Rule violated the Ex Post Facto Clause of the United States Constitution.

In *Colton*, the petitioner had actually been promised a five-month CCC placement prior to the BOP's policy change in December, 2002. The BOP informed Colton in December, 2002, just before he was to begin his service in the CCC, that they were reducing his time in a CCC to a little more than three months. The BOP based its decision on the rendition of the OLC Memo and the newly adopted 10% Rule.

Laws, policies, and other actions violate the Ex Post Facto Clause if they punish behavior not illegal at the time it was committed, or increase punishment beyond that which was authorized at the time of the offense. *Garner v. Jones*, 529 U.S. 244, 249-50 (2000). The Ex Post Facto clause is

10

implicated where a law punishes retrospectively: "[a] law is retrospective if it 'changes the legal consequences of acts completed before its effective date.'" *Miller v. Florida*, 482 U.S. 423, 430 (1987) (quoting *Weaver v. Graham*, 450 U.S. 24, 31, (1981)).

There is no valid Ex Post Facto claim in the instant proceeding, in which the Court takes judicial notice of the fact that on January 24, 2003, one month *after* the rendition of the OLC Memo, the trial court sentenced the petitioner to an eighty-four month prison term. Given an eighty-four month sentence (seven years) handed down in January of 2003, even the petitioner's earliest date of eligibility for CCC placement will obviously occur long after the rendition of the OLC Memo. Therefore, the OLC Memo is not retroactively applied to the petitioner, unlike the petitioner in *Colton*. Accordingly, the instant petitioner does not enjoy a constitutionally protected liberty interest in early release on a date certain into a CCC. The term of placement in a CCC is left strictly to the discretion of the BOP. The plaintiff's petition is dismissed with prejudice as frivolous and for failure to state a claim upon which can be granted 28 U.S.C. §1915(e)(2)(i) and (ii).

## CONCLUSION

In the event the instant petitioner contemplates filing any future civil rights actions seeking damages, the Court will again advise the petitioner of the "Three Strikes Warning" Judge Forester issued in *Bolt IV*. Accordingly, the Court being advised, **IT IS ORDERED** that this action is **DISMISSED**, *sua sponte*, and judgment shall be entered contemporaneously with this memorandum opinion in favor of the respondent.

11

This the ___17th___ day of June, 2005.

JOSEPH M. HOOD, CHIEF JUDGE

Date of Entry and Service:

12